# UNITED STATES DISTRICT COURT
Northern District of Alabama
Office of the Clerk
Room 140, 1729 5th Avenue North
Birmingham, Alabama 35203
(205) 278-1700

Perry Mathis
Clerk

| | | |
|---|---|---|
| HAMPTON PUGH CO., et al., | } | |
| Plaintiff(s) | } | |
| v. | } | Case Number: CV-00-JEO-1307-W |
| | } | |
| MONSANTO CO., et al. | } | |
| Defendant(s) | } | |

## NOTICE OF REASSIGNMENT

The above-styled civil action has been reassigned to the Honorable EDWIN L. NELSON.

Please use case number CV-00-N-1307-W on all subsequent pleadings.

DATED: December 6, 2001

PERRY D. MATHIS, CLERK

By: *[signature: Pat Greene]*
Deputy Clerk

PDM:pg

xc:  Judges
     Counsel

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| HAMPTON PUGH CO., et al., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-JEO-1307-W |
| MONSANTO COMPANY, et al., | ] |
| Defendant(s). | ] |

**FILED**
01 DEC -6 AM 11:16
U.S. DI...
N.D. OF AL...

**ENTERED**
DEC 6 2001

## Memorandum of Opinion

### I. Introduction

The court has for consideration the objections of plaintiffs to the Report and Recommendation of Magistrate Judge John E. Ott. (Doc. # 35). The objections follow the consideration by Judge Ott of separate but similar motions by the defendants. The first is a motion by defendant Monsanto Company to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative to strike the complaint as an impermissible "shotgun pleading." (Doc. # 8-9). The second is a motion by defendants Delta & Pine Land Company (hereinafter "Delta Pine") and D & M International, L.L.C. (hereinafter "D & M"), to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. # 26-27). In his Report and Recommendation of October 22, 2001, Judge Ott recommended that the motions of both parties be granted in part and denied in part. (Doc. # 34). Moreover, Judge Ott recommended the dismissal of plaintiffs' claims without prejudice to allow plaintiffs the opportunity to replead certain aspects of their claims with greater specificity and consistency within thirty days of the entry of the order. (*Id.*). The plaintiffs

filed objections to the recommendations on November 5, 2001. (Doc. # 35). The defendants responded shortly thereafter. (Doc. # 36, 37).

The court has reviewed Judge Ott's opinion, the objections of the plaintiffs, the responses of the defendants, and the underlying pleadings and submissions of the parties. The matter is now ripe for decision. The court has duly considered all issues raised in the objections *de novo*, and upon such consideration, finds the Report and Recommendation, with some exceptions noted *infra*, due to be adopted.

## II. Background

### A. The Allegations of the Complaint

Plaintiffs filed their complaint on May 15, 2000, averring defendants (and other unnamed co-conspirators described in the complaint) to have formed a cartel through which they have "attempted to monopolize and restrain trade in the cotton seed market, and further used its market power in the cotton seed market to restrain trade in the herbicide market." (Doc. # 1, ¶ 1). Plaintiffs allege that defendants Monsanto and Delta Pine sell cotton seed, genetically modified/engineered by the addition of a gene containing the Bacillus Thuringiensis protein (hereinafter "Bt"). The evident purpose of adding Bt to cotton seed is to reduce the need for herbicide application during the growing season. (*Id.*, ¶¶ 2-3). Plaintiffs also allege that D & M is equally owned by Monsanto and Delta Pine.

Plaintiffs allege that the three defendants sought to capture and control the market and restrain trade for cotton seed and herbicide in two ways. First the defendants attempted to "purchase, acquire, merge with or otherwise capture their competitors." (*Id.*, ¶ 4). Second, the defendants instituted a "tying program which required buyers of Bt seed

2

to both sign a licensing agreement with the defendants and use the Monsanto's proprietary chemical 'Roundup' to keep in effect various warranties sold or given with the product." (*Id.*). The complaint sets forth in greater detail additional factual allegations, and pleads four separate counts against the defendants under §§ 1 and 2 of the Sherman Act, and § 3 of the Clayton Act. *See* 15 U.S.C. §§ 1, 2, 14. Specifically, plaintiffs claim that defendants attempted to monopolize the United States cotton seed and herbicide markets, actually monopolized said markets, conspired to unreasonably restrain trade in said markets, and created an unlawful tying arrangement of cotton seed and herbicide. (*Id.*, pp. 19-22). Plaintiffs style their action as a class action, pleaded on behalf of the "U.S. Bt Purchaser Class" and the "U.S. Grower Class." (*Id.*, p. 7).

### B.     The Motions of Defendants

Defendant Monsanto grounds its motion to dismiss upon several legal theories. First, it contends that the patent rights it holds in the genetically modified cotton seeds preclude plaintiffs from bringing the type of antitrust violations alleged. (Doc. # 9, pp. 2, 4-9). Second, it argues that plaintiffs have failed to properly allege specific elements of their antitrust claims. Specifically, Monsanto contends that plaintiffs have failed to allege a plausible relevant market, and have failed to allege a possession by Monsanto of any significant market share in that market. (*Id.*, pp. 9-19). Likewise, Monsanto claims that these same deficiencies, as well as the absence of any allegation that Monsanto forced purchasers to buy the tied product to get the tying product, warrant the dismissal of the unlawful tying claim. (*Id.*, pp. 20-21). Monsanto also claims that the plaintiffs have failed to allege injury sufficient for a finding of antitrust standing. Insofar as the complaint might

3

be construed to allege some injury, Monsanto contends that this so-called injury is simply the result of its lawful exercise of patent rights. (*Id.*, pp. 21-23). Finally, Monsanto argues that the complaint represents an illustration of the phenomenon condemned by the Eleventh Circuit as "shotgun pleadings." (*Id.*, pp. 24-25). Monsanto complains that the pleading is a hodgepodge of incorporated facts, conclusions, and arguments from other cases pending in Illinois, that "makes it impossible to know which allegations are intended to support which antitrust theory." (*Id.*, p. 25).

Defendants Delta Pine and D & M proffer a similarly crafted motion. (Doc. # 26-27). They contend that the plaintiffs have failed to make any allegations justifying an action against them under the antitrust laws. Specifically, they argue that plaintiffs' allegations of anti-competitive and conspiratorial behavior are all directed toward Monsanto, and not them. The claims against them, therefore, must be dismissed. (*Id.*, pp. 3-5).

## III. Discussion

### A. The Report and Recommendation

In his Report and Recommendation, Judge Ott found the entire complaint due to be dismissed without prejudice. (Doc. # 34). Two findings largely controlled this conclusion. First, he found the individual counts of the complaint failed to contain specific (and consistent) allegations of the relevant markets at issue in the action, and the market share controlled by the defendants. Second, he found the action devoid of any allegations that might justify the maintenance of a *per se* claim under the antitrust laws. Other deficiencies were noted in plaintiffs' tying arrangement claim, their allegations of injury (for purposes

4

of antitrust standing), and in the pleading as a whole. Agreeing with Monsanto, Judge Ott found the complaint to possess characteristics of an impermissible shotgun pleading.

He did disagree with the defendants, however, as to the merits presented by their arguments under the patent laws. Although casting this finding against the backdrop of the insufficiently pleaded complaint, Judge Ott concluded that it was not "'beyond doubt that the plaintiff can prove no set of facts in support of his claim.'" *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The defendants do not object to this finding.

Plaintiffs objected to the report and recommendations. They contend that the complaint adequately pleads all claims for purposes of pre-discovery scrutiny. (Doc. # 35). Moreover, they reject Judge Ott's requiring them to plead the "precise contours" of the relevant market and "exact" market share controlled by the defendants. They argue that these requirements amount to *de facto* heightened pleading analogous to Rule 9 of the Federal Rules of Civil Procedure, a notion rejected on numerous occasions by the courts.

**B.     The Merits of the Parties' Arguments**

    **1.     Shotgun Pleadings**

The court notes at the outset its disagreement with the characterization of this complaint as a shotgun pleading. Shotgun pleadings typically contain "one count [in which] the plaintiffs have presented multiple claims for relief, supporting them with a rambling set of factual allegations that may or may not be relevant to each claim." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1284 (11th Cir. 2000); *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). They tend to be "so disorganized and ambiguous that it is

5

almost impossible to discern precisely what it is that [the plaintiffs] are claiming." *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997). Shotgun pleadings generally produce like responses, leaving the court with "pleadings [that] make it difficult, if not impossible, to set the boundaries for discovery." *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001). These pleadings are generally filed "to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims." *Id.* at 1130.

A difference exists, however, between shotgun pleadings and pleadings that could be more artfully drafted. While the latter may offend defendants' esthetic tastes, they do not warrant the striking of the complaint. Moreover, whether plaintiffs have cut and pasted allegations from other cases pending elsewhere is irrelevant if those allegations support plaintiffs' claims.

The court does not find the complaint to be an impermissible shotgun pleading. While it may possess some characteristics of such pleadings – for example, the mass incorporation of facts at the incipience of each count – the court does not believe that these characteristics alone render this complaint shotgun. At most the complaint is a shotgun pleading shooting slugs. Nevertheless, the motion to strike the complaint on this ground is due to be denied.

### 2. The Insufficiency of Plaintiffs' Allegations

The court does find itself in agreement with Judge Ott's recommendation that the complaint be dismissed without prejudice, and plaintiffs granted leave to amend same. "Notice pleading is all that is required for a valid antitrust complaint." *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985); *see also Leatherman v. Tarrant County*

*Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). "Under notice pleading the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lombard's*, 753 F.2d at 975 (quotations omitted). Indeed, "in an antitrust suit where the proof and details of the alleged conspiracy are largely in the hands of the alleged co-conspirators . . ., a complaint should not be dismissed unless it is found to be wholly frivolous." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) (quotations and citations omitted). "Nevertheless, enough data must be pleaded so that each element of the alleged antitrust violation can be properly identified. Conclusory allegations will not survive a motion to dismiss if not supported by the facts constituting a legitimate claim for relief." *Lombard's, supra*. "[A] complaint may be dismissed when it fails to allege some fact that is essential to the cause of action. The Supreme Court has observed that 'it is not . . . proper to assume that the plaintiff can prove any facts that it has not alleged.'" 2 Phillip E. Areeda et al., *Antitrust Law* ¶ 307c1, at 71 (2d ed. 2000) (quoting *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1972)).

As discussed *supra*, Judge Ott found plaintiffs to have failed to adequately plead both the relevant markets at issue in this action as well as the market share controlled by the defendants. These inadequacies rendered improperly pleaded the claims of attempted and actual monopolization, conspiracy, and tying. Judge Ott found plaintiffs' tying claim inadequately pleaded for other reasons as well. In fact, he found that each allegation necessary for a tying claim had not been adequately pleaded.

7

"'Antitrust claims often rise or fall on the definition of the relevant market.'" *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998) (quoting *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995)). It is the plaintiff's burden to define this market. *See id., see also Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). Such definition includes two components, the product market and the geographic market. *See Double D*, 136 F.3d at 560. The former is determined through, *inter alia*, a consideration of the reasonably interchangeable products within the market. *See id., see also Queen City Pizza*, 124 F.3d at 436; *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993). The latter is defined by the "commercial realities faced by consumers . . ., [and] includes the geographic area in which consumers can practically seek alternative sources of the product . . . ." *Double D, supra.*

Plaintiffs are correct to observe that the precise contours of the relevant market need not be identified at this stage of the proceedings. Through their facts, however, plaintiffs must "'at least outline or adumbrate' a violation of the Sherman Act . . . ." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (quoting *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, (7th Cir. 1984)). This plaintiffs have failed to do.[1] Rather than proffer a consistent market definition, or even alternative ones that could serve as a springboard for discovery, plaintiffs vacillate among the proposed market definition in such a way as to preclude both the defendants and the court from ascertaining any idea of what plaintiffs think the relevant market may be. Likely critical in this action will be a determination of

---

[1] See Judge Ott's Report and Recommendation for a recitation of the elements pertinent to claims of conspiracy and monopolization under §§ 1 and 2 of the Sherman Act, and unlawful tying under § 3 of the Clayton Act. (Doc. # 34, pp. 8-17).

whether the relevant cotton seed market in this action involves the entire United States cotton seed market, or some subset – genetically modified cotton seed, or genetically modified cotton seed sold in the southeastern United States. Plaintiffs need not wed themselves to a specific definition or venture down the path of dangerous speculation. But if plaintiffs have an outer boundary they believe demarcates – at least initially – the relevant markets at issue in this action, they need to allege it with a consistency that will permit the defendants and the court to exercise proper review and scrutiny of the complaint.

Likewise, plaintiffs' pleading of defendants' market share is insufficient to satisfy the obligations they hold in bringing the complaint. Plaintiffs need not allege a market share with pinpoint numerical accuracy; however, plaintiffs do need to proffer more than what are best vagaries by implication.[2] For example, plaintiffs contend that "Monsanto, Delta Pine and D & M and their co-conspirators control virtually all of the market for cotton seeds for sale in the United States." (Doc. # 1, ¶ 42). The apparent inference plaintiffs seek the court to draw is that the defendants control more than 50 percent of the market. However, the plaintiffs also allege that through

> mergers and acquisitions in a short four-year time frame, control of a massive quantity of valuable plant genetic material, control over patents covering the gene splicing techniques, ownership over virtually all of the patents for valuable gene modified traits, and control over more than 80% of the cotton seed distribution network was passed to six corporations.

(Doc. # 1, ¶ 64). Coupled with the confusion created by the multiple definitions of the relevant market, the above allegation muddles the inferences capable of being drawn as

---

[2] Indeed an allegation of market share in the 40 percent to 50 percent range would likely be sufficient to survive a *motion to dismiss*. See, e.g., *AD/SAT v. AP*, 181 F.3d 216, 229 (2d Cir. 1999); cf. *U.S. Anchor Mfg.*, 7 F.3d at 999-1001.

9

to the market power possessed by the defendants. Simply put, the court is unsure of who is claimed to hold what.

The absence of adequately defined relevant markets and market shares affects both the Sherman Act claims of monopolization and conspiracy, and the tying claim under the Clayton Act. As Judge Ott explained in Part 3.c of his Report and Recommendation, "[t]he complaint is not sufficient because it is unclear who has the requisite power." (Doc. # 34, p. 19). Another failing of the tying claim, as Judge Ott found, is the lack of any consistent allegation of separate products unlawfully tied together. The court recognizes plaintiffs' assertion that the products at issue in this action include variants within a broader universe of the distinctly separate products of genetically modified cotton seed and herbicide. (Doc. # 35, pp. 7-8). Nevertheless, the court believes plaintiffs can clarify these allegations so as to permit both it and the defendants the opportunity to exercise proper review and scrutiny of the complaint.[3]

The court does not, however, find the tying claim allegations of compulsion, anti-competitive effect, or interstate commerce, so insufficient under the notice pleading standards to justify dismissal and an order to replead. Like the majority of the complaint, these allegations could be clearer. But they are not so woefully inconsistent or absent to warrant action by the court. In reformulating its complaint, the court welcomes any housecleaning the plaintiffs wish to do on their own initiative. Such cleaning is not,

---

[3] An additional justification for this request lies in the fact that it – coupled with rarefied definitions of relevant market and market share – will provide the court an opportunity to consider whether the plaintiffs are, in fact, seeking relief as a result of alleged wrongdoings associated with genetically modified cotton, as that product exists and competes in the entire United States cotton seed, or other, market.

however, mandatory. Likewise, the court believes the complaint sufficiently alleges injury for purposes of establishing antitrust standing. Reasonable inferences may be drawn from the complaint to satisfy the two-pronged test discussed by Judge Ott. *See Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997).[4] Of course, the plaintiffs may well wish to clarify this aspect of their complaint as well. The court will not stop them if they choose to do so.

Finally, the court makes the following two observations. First, the plaintiffs should be aware that they are not being held to a heightened pleading standard. Rather, they are simply being asked to *consistently* allege the elements of their antitrust claims. Second, the Report and Recommendation makes little mention of the argument of Delta Pine and D & M that the complaint makes more substantive allegations against Monsanto than against them. In light of the result reached, the court declines to address the merits of this argument. Plaintiffs, however, should give thought to whether they actually do have parallel claims against both Monsanto, Delta Pine, and D & M. A revised complaint may render this argument moot. Then again, it may not.

---

[4] The two-prong test to measure antitrust standing requires:
First, the plaintiff must establish that it has suffered antitrust injury. As the Supreme Court has made clear, to have standing antitrust plaintiffs must prove more than injury casually linked to an illegal presence in the market [*i.e.,* but for causation]. Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. Second, the plaintiff must establish that it is an efficient enforcer of the antitrust laws. This determination is predicated on the target area test. The target area test requires that an antitrust plaintiff both prove that he is within that sector of the economy endangered by a breakdown of competitive conditions in a particular industry and that he is the target against which anticompetitive activity is directed.
*Florida Seed*, 105 F.3d at 1374 (quotations and citations omitted).


## IV.   Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 6th of December, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE